UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:                                                            Chapter 11

Brooklyn Renaissance, LLC,                                        Case No. 15-43122-cec

                              Debtor(s).
-------------------------------------------------------------x
JJCC Real Estate LLC,
                                                                  Adv. Pro. No. 16-01073-cec
                              Plaintiff,

        -against-

Brooklyn Renaissance, LLC,

                              Defendant.
-------------------------------------------------------------x


OPINION ON MOTION TO DISMISS



APPEARANCES

Steve Schoenfeld, Esq.                      Kevin K. Tung, Esq.
DelBello Donnellan Weingarten Wise &        Kevin Kerveng Tung, PC
Wiederkehr, LLP                             136-20 38th Avenue, Suite 3D
One North Lexington Avenue                  Flushing, New York 11354
White Plains, New York 10601                *Former Counsel for Plaintiff JJCC Real*
*Counsel for Defendant Brooklyn*            *Estate LLC*
*Renaissance, LLC*

                                            Robert J. Spence, Esq.
                                            Spence Law Office, P.C.
                                            55 Lumber Road, Suite 5
                                            Roslyn, New York 11576
                                            *Counsel for Plaintiff JJCC Real Estate LLC*


CARLA E. CRAIG
Chief United States Bankruptcy Judge

## INTRODUCTION

This matter comes before the court on the motion to dismiss (the "Motion to Dismiss"), filed by Brooklyn Renaissance, LLC (the "Debtor" or "Defendant") the complaint filed by JJCC Real Estate LLC ("Plaintiff"). Plaintiff and Defendant entered into a contract for the sale of real property, including the building located at 557 Union Street, Brooklyn, New York 11215 ("557 Union") by Defendant to Plaintiff. Plaintiff refused to close based upon its contention that Defendant had not provided title insurance as required by the contract. Defendant declared a default under the contract for sale and retained Plaintiff's deposit as liquidated damages. Plaintiff commenced this adversary proceeding seeking the return of its deposit, arguing that Defendant had breached the contract for sale by failing to deliver marketable title at closing. Defendant responded by filing the Motion to Dismiss. For the reasons stated below, the Motion to Dismiss is granted in part and denied in part.

## JURISDICTION

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b), the Eastern District of New York standing order of reference dated August 28, 1996, as amended by order dated December 5, 2012, and the retention of jurisdiction contained in the Order Authorizing the Sale of 555 and 557 Union Street, Brooklyn, New York [Case No. 15-43122, ECF No. 58]. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (N) and (O). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

## BACKGROUND

For purposes of this motion to dismiss, the Court assumes the truth of all well-pled factual allegations in Plaintiff's complaint (the "Complaint").

On July 6, 2015, Defendant filed a voluntary petition under chapter 11 of the Bankruptcy Code. In its Schedule of Real Property, Defendant listed an "Option to Purchase" 557 Union. (Compl. Ex. A, ECF No. 3.)[1] The schedule stated that Defendant's interest in 557 Union is an equitable interest, and that the Property was "owned by Brooklyn Theatrical, an affiliate of the Debtor." (Compl. Ex. A, ECF No. 3.) On September 29, 2015, Defendant filed a Motion to sell certain real property belonging to Defendant, including 557 Union (the "Motion to Sell"). (Mot. to Sell, Case No. 15-43122, ECF No. 32.) In the Motion to Sell, Defendant stated that the Property "was conveyed to the Debtor by the prior owner and the Debtor's affiliate, Brooklyn Theatrical LLC. . . ." (Mot. to Sell ¶ 26, Case No. 15-43122, ECF No. 32.) This deed was not and could not be recorded because it was not acknowledged. (Mot. to Sell ¶ 27, Case No. 15-43122, ECF No. 32.)

Prior to filing the Motion to Sell, Defendant negotiated a purchase and sale agreement with Plaintiff (the "PSA").[2] (Compl. Ex. B, ECF No. 3-1 (hereinafter "PSA").) The PSA provided that Plaintiff would pay $3,800,000.00 for both 557 Union and the adjacent parcel of real property located at 555 Union Street, Brooklyn, New York 11215 ("555 Union").[3] (Compl. ¶ 11, ECF No. 1; PSA § 1.1, ECF No. 3-1.) Pursuant to the PSA, Plaintiff tendered a deposit of $380,000.00 to Defendant (the "Deposit"). (Compl. ¶ 14, ECF No. 1; PSA § 1.1(g), ECF No 3-1.)

The PSA gave Plaintiff the right to terminate the contract if Defendant was "unable to close within 180 days after the Effective Date, provided that such inability to close is due in no part to the actions of [Plaintiff]." (PSA § 1.1(h), ECF No. 3-1.) The Effective Date under the PSA was

---

[1] All references to "ECF No." refer to the docket in this adversary proceeding, Adv. Pro. No. 16-1073, unless otherwise indicated.

[2] The PSA refers to Plaintiff as "JCC Real Estate LLC." Defendant represented that this was a typographical error and no party disputes that it was Plaintiff and Defendant who entered into the PSA. (Mot. to Dismiss ¶ 8 n. 2, ECF No. 8.)

[3] No party has raised any disputes as to Defendant's title to 555 Union.

August 30, 2015. (PSA § 1.1(e), ECF No. 3-1.) In the event Defendant defaulted, Plaintiff was entitled to a refund of the Deposit. (PSA § 1.1(g), ECF No. 3-1.) Plaintiff's obligation to close was conditioned on "its title company" delivering "a Standard 2006 ALTA Owner's Policy of title Insurance with New York Endorsement ( the "Title Policy") . . . . insuring [Plaintiff] as owner of good, marketable and indefeasible fee simple title . . . ." (PSA § 3.3, ECF No. 3-1.) Section 1.2(c) of the PSA states that both parties acknowledged that 557 Union had been deeded to Defendant from "Brooklyn Theatrical," but that the deed had not been recorded. (PSA § 1.2(c), ECF No. 3-1.) The PSA also provides that the deed would be recorded prior to the closing. (PSA § 1.2(c), ECF No. 3-1.)

Plaintiff selected First American Title Insurance Company ("First American") to issue the Title Policy. (Compl. ¶ 22, ECF No. 1.) First American ultimately declined to issue the Title Policy. (Compl. ¶ 22, ECF No. 1.) Defendant then requested Stewart Title Insurance Company ("Stewart") to issue the Title Policy. (Compl. ¶ 25, ECF No. 1; Mot. to Dismiss ¶ 32, ECF No. 8.) On February 16, 2016, Defendant sent Plaintiff a letter stating that Stewart was ready to issue the Title Policy, although Plaintiff had informed Defendant, by letter dated February 13, 2016, that it objected to Stewart as its insurer. (Mot. to Dismiss ¶35, ECF No. 8; Mot. to Dismiss Ex. F, G, ECF No. 8-3.) Plaintiff asserted that it had specifically negotiated with Defendant that title insurance issued by Stewart would not satisfy the seller's obligation under the PSA. (Mot. to Dismiss Ex. G, ECF No. 8-3; Pl.'s Obj. ¶ 32, ECF No. 11.)

On February 8, 2016, Defendant sent Plaintiff a letter setting a "time is of the essence" closing for February 24, 2016 at 11:00 a.m. (Compl. ¶ 29, ECF No. 1; Mot. to Dismiss Ex. E, ECF No. 8-2.) Plaintiff responded by letter on February 13, 2016 rejecting the demand for a closing based on Defendant's inability to close according to the terms of the PSA as its chosen title

company, First American, was not ready to issue the Title Policy. (Compl. ¶ 30, ECF No.1; Mot. to Dismiss Ex. F, ECF No. 8-3.) Plaintiff appeared at the closing on February 24, 2016 at 11:00. (Compl. ¶ 32, ECF No. 1.) Defendant confirmed that it had not cleared the title issues with First American, and Plaintiff declined to proceed with the closing. (Compl. ¶ 32, ECF No. 1; Mot. to Dismiss ¶ 39, ECF No. 8.)

On February 26, 2016, Defendant sent Plaintiff a letter declaring a default under the PSA and stating that Defendant intended to retain the Deposit. (Compl. ¶ 33, ECF No. 1; Mot to Dismiss Ex. K, ECF No. 8-3.) Plaintiff responded by sending a letter on March 2, 2016 demanding return of the Deposit. (Compl. ¶ 34, ECF No. 1; Mot. to Dismiss Ex. L, ECF No. 8-3.) On March 3, 2016, Defendant sent a further letter stating it would not be returning the Deposit and intended to retain it as liquidated damages pursuant to the PSA. (Compl. ¶ 35, ECF No. 1; Mot to Dismiss Ex. M, ECF No. 8-3.) Plaintiff commenced this adversary proceeding on March 31, 2016 seeking the return of the Deposit. (Compl., ECF No. 1.)

Defendant filed the Motion to Dismiss on May 25, 2016. (Mot. to Dismiss, ECF No. 8.) On June 13, 2016, Plaintiff filed an objection to the Motion to Dismiss. (Pl.'s Obj., ECF No. 11.) A hearing on the Motion to Dismiss was held before the Court on June 15, 2016 at which the Court reserved decision and requested additional briefing from the parties. Plaintiff filed a supplemental memorandum of law and a supplemental affirmation in opposition on July 6, 2016. (Suppl. Mem. of Law in Opp'n, ECF No. 19; Suppl. Affirm. in Opp'n, ECF No. 20.) On July 20, 2016, Defendant filed a supplemental memorandum of law in support of the Motion to Dismiss. (Suppl. Mem. of Law in Supp., ECF No. 22.)

<u>DISCUSSION</u>

The complaint's first cause of action alleges that Defendant breached the contract by failing to deliver the Title Policy from First American pursuant to § 3.3 of the PSA. (Compl. ¶¶ 36-39, ECF No. 1.) The second cause of action alleges Defendant's failure to deliver the deed to 557 Union according to the PSA "constitutes a breach of contract" by Defendant and allowing Defendant to retain the Deposit in light of that breach would unjustly enrich Defendant. (Compl. ¶¶ 40-45, ECF No. 1.) The third cause of action alleges that Defendant breached the contract by failing to deliver the Title Policy from First American within 180 days of the Effective Date pursuant to § 1.1(h) of the PSA. (Compl. ¶¶ 46-49, ECF No. 1.) The fourth cause of action alleges that Defendant engaged in fraud by misrepresenting the state of title of 557 Union. (Compl. ¶¶ 50-55, ECF No. 1.)

Defendant argues that the first and third causes of action should be dismissed because the phrase "its title company" in § 3.3 of the PSA must be understood to refer to any title company that would issue the Title Policy, not to the title company selected by Plaintiff. (Mot. to Dismiss ¶¶ 47-50, ECF No. 8.) Defendant further argues that these causes of action should be dismissed because Plaintiff failed to give the proper notice of default pursuant to §§ 5.2.2 and 8.3 of the PSA. (Mot. to Dismiss, ¶¶ 51-52, ECF No. 8.) Defendant argues that the second cause of action should be dismissed because an unjust enrichment claim cannot be maintained when there is a valid enforceable contract. (Mot. to Dismiss, ¶¶ 53-55, ECF No. 8.) Finally, Defendant argues that the fourth cause of action should be dismissed because it is duplicative of the breach of contract claims, and it does not meet the requirements of Fed. R. Civ. P. 9(b). (Mot. to Dismiss, ¶¶ 56-70, ECF No. 8.)

6

A.    <u>Legal Standard</u>

Rule 8(a)(2),[4] incorporated by reference in Bankruptcy Rule 7008,[5] requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2); <u>see</u> Fed. R. Bankr. P. 7008. Rule 12(b)(6), incorporated by reference in Bankruptcy Rule 7012, provides that a complaint may be dismissed "for failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6); <u>see</u> Fed. R. Bankr. P. 7012(b). The purpose of Rule 12(b)(6) "'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits.'" <u>Halebian v. Berv</u>, 644 F.3d 122, 130 (2d Cir. 2011) (quoting <u>Global Network Commc'ns, Inc. v. City of New York</u>, 458 F.3d 150, 155 (2d Cir. 2006)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570). In making this determination, a court must liberally construe the complaint, accept the factual allegations as true, and draw all reasonable inferences in favor of the plaintiff. <u>See</u> <u>Goldstein v. Pataki</u>, 516 F.3d 50, 56 (2d Cir.), <u>cert. denied</u>, 554 U.S. 930 (2008). However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986); <u>see</u> <u>Iqbal</u>, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial

---

[4] References to a "Rule" or "Rules" are to the Federal Rules of Civil Procedure.
[5] References to a "Bankruptcy Rule" or "Bankruptcy Rules" are to the Federal Rules of Bankruptcy Procedure.

experience and common sense." Id. at 679. In other words, plausibility "'depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable.'" Fink v. Time Warner Cable, 714 F.3d 739, 741 (2d Cir. 2013) (quoting L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 430 (2d Cir. 2011)).

The fourth cause of action alleges fraud and must be pled according to Rule 9(b). Rule 9(b), incorporated by reference in Bankruptcy Rule 7009, requires a pleading, when alleging fraud, to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); see Fed. Bankr. R. 7009. To state a claim for fraud, "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993). Fraudulent intent may be alleged generally, but the plaintiff is required to plead sufficient facts to support a strong inference of fraudulent intent. Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994).

B.    Breach of Contract Claims (First and Third Causes of Action)

To state a claim for breach of contract under New York law, the complaint must allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996). Additionally, "New York law provides that this Court must enforce contract provisions clearly expressing the intent of the parties." Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc., 448 F.3d 573, 580 (2d Cir. 2006) (citing Greenfield v. Philles Records, Inc., 780 N.E.2d 166, 170 (N.Y. 2002) ("[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." (citations

8

omitted)). Here, both parties acknowledge the existence and the validity of the PSA. Plaintiff has also adequately pled its damages as Defendant has retained the Deposit. The question at this stage is whether Plaintiff has adequately alleged its performance under the PSA and Defendant's breach.

The basic obligations of the parties under the PSA are quite simple: Plaintiff was required to tender the purchase price at closing, and Defendant was required to deliver to Plaintiff a deed conveying good, indefeasible, and marketable fee simple title to 555 Union and 557 Union. (PSA §§ 1.2, 5.3(a), ECF 3-1.) The PSA gave Plaintiff the right to terminate the agreement if the closing did not occur within 180 days of the Effective Date (August 30, 2015) so long as the failure to close was not due to the actions or inactions of Plaintiff. (PSA § 1.1(h), ECF No. 1.) It is undisputed that the closing did not occur within 180 days of the Effective Date. Pursuant to § 3.3 of the PSA. Plaintiff's obligation to close was conditioned on "its title company" delivering the Title Policy. (PSA § 3.3, ECF No. 3-1.)

The crux of the dispute with respect to the first and third causes of action is the meaning of the term "its title company." In the Complaint, Plaintiff alleges that "its title company" means the title company selected by Plaintiff. Defendant argues that "its title company" does not refer to a title company chosen by Plaintiff. Under Defendant's interpretation, Plaintiff's obligation to close is triggered if *any* title company is willing to issue the Title Policy.

In the PSA, the noun preceding "its title company" is "Purchaser" (i.e., Plaintiff). (PSA § 3.3, ECF No. 3-1.) Thus, the plain meaning of the term is "Purchaser's title company." Defendant argues that because the Title Policy will be issued in favor of the purchaser, any title company issuing the Title Policy would be "Purchaser's title company." It is axiomatic, however, that, in a sale of real property, a policy of title insurance is issued in favor of the purchaser, not the seller. To say that "its title company" means "the title company issuing the Title Policy in favor of the

purchaser" renders the word "its" meaningless. Under this interpretation, "its title company" means the same thing as "a title company," "the title company," or "any title company." This goes against the plain meaning of the sentence. "Purchaser's title company" does not mean the same thing as "any title company the seller can find to issue the Title Policy in favor of the purchaser."

Defendant argues that if the parties intended to require the Title Policy to be issued by a company of Plaintiff's choosing, and only that company, the PSA could have spelled that out or specifically named First American. This argument, however, applies with equal force to Defendant's interpretation. If the parties had intended that the title insurance condition to Plaintiff's obligation to close would be satisfied by a Title Policy issued by any title company, they could have spelled that out. At a minimum, the language of the PSA is ambiguous, and the Motion to Dismiss must be denied with respect to these causes of action for that reason. See Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 178 (2d Cir. 2004) ("Unless for some reason an ambiguity must be construed against the plaintiff, a claim predicated on a materially ambiguous contract term is not dismissible on the pleadings.")

Defendant's arguments that the breach of contract claims must be dismissed because Plaintiff did not provide the notice required in §§ 5.2.2 and 8.3 of the PSA also fail. Section 1.1(h) of the PSA provided Plaintiff with a separate right to terminate the PSA if the sale did close within 180 days of the Effective Date. Unlike the default provisions in §§ 5.2.2 and 8.3, § 1.1(h) contains no notice requirements. Further, § 8.3 specifically exempts defaults due to "a failure to close on the Closing Date" (PSA § 8.3, ECF No. 3-1.) No party disputes that the closing did not occur within 180 days of the Effective Date. Assuming the facts pled in the Complaint to be true, Plaintiff was entitled to terminate the agreement pursuant to § 1.1(h) and no additional notice was required. Therefore, the Motion to Dismiss is denied with respect to the first and third causes of action.

C.    Unjust Enrichment Claim (Second Cause of Action)

In order to state a claim for unjust enrichment under New York law, a plaintiff must allege, "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Beth Israel Med. Ctr, 448 F.3d at 586 (citing Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir.2000)). "The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in absence of an agreement." Goldman v. Metro. Life Ins. Co., 841 N.E.2d 742, 746 (N.Y. 2005). "Where the parties executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded." Simkin v. Blank, 968 N.E.2d 459, 464-65 (N.Y. 2012) (quoting IDT Corp. v. Morgan Stanley Dean Witter & Co., 907 N.E.2d 268, 274 (N.Y. 2009)).

In Beth Israel Med. Ctr., the plaintiffs sued the defendant for breach of contract and, in the alternative, unjust enrichment due to alleged underpayments under New York law. Beth Israel Med. Ctr., 448 F.3d at 578. The district court granted summary judgment for the defendant and dismissed all claims. Id. at 579. The Second Circuit affirmed, holding that the unjust enrichment claims were precluded because valid, enforceable contracts existed between the plaintiffs and the defendant. Id. at 587-88. Similarly, in Am. Tax Funding, LLC v. City of Syracuse, the plaintiff sued the defendant for breach of contract and, in the alternative, unjust enrichment relating to the purchase and sale of delinquent tax liens. Am. Tax Funding, LLC v. City of Syracuse, 41 F. Supp. 3d 188 190-91 (N.D.N.Y. 2014). The court stated that the parties' relationship was defined by "two detailed written contracts," and the plaintiff's "unjust enrichment and breach of contract claims [arose] from the same factual allegations and [sought] the exact same amount of damages."

Id. at 194-95. The court granted the defendant's motion, holding that the dispute centered "on the definition of contract terms, not the validity or application of the contracts." Id. at 195.

Here, neither party disputes the existence of a valid, enforceable contract and its application to the subject matter at issue. Plaintiff and Defendant entered into the PSA on August 30, 2015. The dispute involves the retention of the Deposit, which is covered by the PSA. Plaintiff's unjust enrichment claim is based on the same factual allegations and seeks the same amount of damages as its breach of contract claims. See Am. Tax Funding, 41 F. Supp. 3d at 194. Plaintiff did not seek to rescind the contract before filing suit, and Plaintiff's core claims rest on the allegation that it had performed its obligations under a valid, enforceable contract the scope of which clearly covers the instant dispute. Therefore, Plaintiff's second cause of action for unjust enrichment must be dismissed.

D.    Fraud (Fourth Cause of Action)

Plaintiff's fourth cause of action for fraud also fails. Plaintiff has failed to adequately plead fraud in accordance with Rule 9(b). In addition, this cause of action is duplicative of the breach of contract claims and does not assert any injury or seek any remedy distinct from those claims, and must be dismissed for that reason as well.

1.    Plaintiff's Fraud Claim Is Insufficient under Rule 9(b)

To state a cause of action for fraud in New York, a plaintiff must allege facts showing: "[1] a misrepresentation or a material omission of fact which was false and known to be false by defendant, [2] made for the purpose of inducing the other party to rely upon it, [3] justifiable reliance of the other party on the misrepresentation or material omission, and [4] injury." Premium Mortg. Corp. v. Equifax, Inc., 583 F.3d 103, 108 (2d Cir.2009).

In Silverman v. Household Fin. Realty Corp. of New York, 979 F. Supp. 2d 313 (E.D.N.Y. 2013), plaintiffs brought an action for fraud in connection with a refinancing loan on their property.

Defendants moved to dismiss the claim pursuant to Rule 12(b)(6). <u>Id</u>. The court applied the pleading standard of Rule 9(b) and determined that the plaintiffs failed to "plead with the specificity required under the federal rules or case law" <u>Id.</u> at 320. "Beyond vaguely describing that Defendants 'made false representations and/or omissions to the Plaintiffs,' the complaint does not specify any statements, speakers, times or places. Therefore, Defendants' motion to dismiss the fraud and the fraud in the inducement claims are granted." <u>Id.</u>

Here, it is clear Plaintiff failed to meet the heightened pleading requirements of Rule 9(b). Just as in <u>Silverman</u>, Plaintiff does not specify what statements were false, who made the false statements, or when the statements were made. Plaintiff merely states "defendant at all times prior to the signing of the PSA represented to the Plaintiff that the defendant had legal title to the 557 Property." (Compl. ¶ 51, ECF No. 1.) Additionally, Plaintiff has failed to allege facts that give rise to a "strong inference" of fraudulent intent. The PSA states correctly that 557 Union Street had been deeded to Defendant by the prior owner, but that the deed had yet to be recorded. (PSA § 1.2(c), ECF No 3-1.) Further, § 7.1 of the PSA which covers "Seller's Representations and Warranties" does not contain any representations regarding legal title to 557 Union, and in addition, provides that Defendant makes no other representations and warranties except as provided in the agreement. (PSA § 7.1(c), ECF No. 3-1.) Plaintiff does not make any factual allegations that support a "strong inference of fraudulent intent." Therefore, Plaintiff's cause of action for fraud must be dismissed.

### 2. *Plaintiff's Fraud Claim Is Duplicative of Its Breach of Contract Claims*

"It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated <u>Clark–Fitzpatrick, Inc. v. Long Island R .R. Co.</u>, 516 N.E.2d 190, 193 (N.Y. 1987). Such duty must arise "from circumstances extraneous to, and not constituting elements of, the contract, although it may be

connected with and dependent upon the contract." Id. Mere allegations of fraudulent intent cannot convert a breach of contract action into a claim for fraud. Del Ponte v. 1910-12 Ave. U. Realty Corp., 775 N.Y.S.2d 905, 905 (N.Y. App. Div. 2004). Thus, a plaintiff may not maintain a fraud claim when the allegations and the relief sought mirror those in the breach of contract claim. See, e.g., New York University v. Cont'l Ins. Co., 662 N.E.2d 763, 768 (N.Y. 1995) ("[W]here a party is merely seeking to enforce its bargain, a tort claim will not lie."); Manas v. VMS Associates, LLC, 863 N.Y.S.2d 4, 7-8 (N.Y. App. Div. 2008) (holding that where the damages sought are entirely recoverable under breach of contract action, fraud claim is duplicative); Tsilogiannis v. 53-11 90th St. Associates, Inc., 739 N.Y.S.2d 633, 633 (N.Y. App. Div. 2002) (holding that fraud claim is insufficient where it is premised upon breach of duty arising under a contract).

Here, Plaintiff's fraud claim is little more than a rehashing of its claims for breach of contract. While the fourth cause of action makes general allegations regarding fraudulent misrepresentations regarding the state of title to 557 Union, such claims also form the core of Plaintiff's breach of contract claims, namely that Defendant could not deliver title pursuant to the terms of the PSA. Although the Complaint alleges that Defendant made misrepresentations regarding title to 557 Union in the PSA, and that Defendant intended to deceive Plaintiff "[b]y executing the PSA . . . " (Compl. ¶¶ 12-13, ECF No. 1), Plaintiff cannot turn its breach of contract claim into a fraud claim simply by pointing to representations made in the contract and reciting the elements of fraud. Del Ponte, 775 N.Y.S.2d at 905. Moreover, the relief sought in the fourth cause of action is identical to the relief sought in every other cause of action: return of the Deposit plus attorney's fees, costs, and interest. (See Compl. ¶¶ 39, 45, 49, 54, ECF No. 1.) Therefore, Plaintiff's cause of action for fraud must be dismissed.

<u>CONCLUSION</u>

For the reasons stated above, the Motion to Dismiss is granted with respect the second and fourth causes of action and denied with respect to the first and third causes of action. A separate order will issue.



**Dated: Brooklyn, New York**
       **August 18, 2016**

                                                  **Carla E. Craig**
                                     **United States Bankruptcy Judge**